UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF WASHINGTON

| | |
|---|---|
| MICHAEL R. SCHMAHL, individually and as Personal Representative of the Estate of F. MAUREEN SCHMAHL; MARY BOYLE, individually; ANNE STRATTON, individually; JANIS WAGGONER, individually; JERRY SCHMAHL, individually; JAMES SCHMAHL, individually; and KATHY LAST, individually,<br><br>    Plaintiffs,<br><br>    v.<br><br>MACY'S DEPARTMENT STORES, INC. dba BON-MACY'S, a foreign corporation,<br><br>    Defendants/Third-Party Plaintiff,<br><br>    v.<br><br>PALOUSE MALL ASSOCIATES, LLC, a Washington Corporation,<br><br>    Third-Party Defendant. | NO. CV-09-68-EFS<br><br>**ORDER GRANTING AND DENYING IN PART THIRD-PARTY DEFENDANT PALOUSE MALL'S MOTION FOR SUMMARY JUDGMENT (1) DISMISSING MACY'S BREACH OF CONTRACT CLAIM; AND (2) ENTERING JUDGMENT ON PALOUSE MALL'S COUNTERCLAIM; GRANTING AND DENYING IN PART MACY'S MOTION TO STRIKE PARAGRAPHS AND EXHIBITS TO DECLARATION OF KIM IMPECOVEN; AND GRANTING MACY'S MOTION FOR ORDER DETERMINING APPLICABLE STATE LAW** |

On June 2, 2010, a hearing occurred in the above-captioned matter. Anamaria Gil appeared on behalf of Defendant Macy's Department Store ("Macy's"). Gerald Kobluk and Gregory J. Arpin appeared on behalf of Third-Party Defendant Palouse Mall Associates, LLC ("the Mall"). Before the Court was the Mall's Motion for Summary Judgment 1) Dismissing Macy's Breach of Contract Claim and 2) Entering Judgment on Palouse Mall's

ORDER * 1

CounterClaim (Ct. Rec. 30), and Macy's Motion to Strike Paragraphs and Exhibits to Declaration of Kim Impecoven (Ct. Rec. 38). Both motions were opposed. Also, before the Court, without oral argument, is Macy's opposed Motion for Order Determining Applicable State Law. (Ct. Rec. 62.) After reviewing the submitted material and relevant authority and hearing from counsel, the Court is fully informed and grants and denies in part the Mall's summary judgment motion, grants and denies in part Macy's motion to strike, and grants Macy's "state law" motion.

## I. Background

Macy's leases retail space in the Palouse Mall in Moscow, Idaho. Macy's and the Mall's relationship is governed by a lease agreement ("the Lease"). The Lease contained similar mutual indemnity provisions and dissimilar mutual insurance provisions. These provisions state:

> 31.1 <u>Lessee [Macy's] will indemnify Lessor [Mall]</u> and save it harmless from and against any and all claims, actions, damages, liability and expenses in connection with loss of life, personal injury, and/or damage to property arising from or out of any occurrence in, upon or at the leased premises, <u>not due to the negligence of Lessor [Mall]</u>, its agents or employees, or arising out of the occupancy or use by Lessee [Macy's] of the leased premises or any part thereof, or occasioned by any act or omission of Lessee [Macy's], its agents, employees or concessionaires.
>
> 31.2 <u>Lessor [Mall] will indemnify Lessee [Macy's]</u> and save it harmless from and against any and all claims, actions, damages, liability and expense in connection with loss of life, personal injury, and/or damage to property arising from or out of any occurrence in or upon the Common Areas <u>not due to the negligence of the Lessee [Macy's]</u>, its agents or employees, or occasioned by any act or omission of the Lessor [Mall], its agents or employees.
>
> 32.1 <u>Lessee [Macy's] shall</u> during the entire term, at Lessee's [Macy's] own cost and expense <u>keep</u> in force by advance payment of premiums, <u>liability insurance</u> in an amount of not less than One Million Dollars ($1,000,000) for injury to or death of one or more than one person as a result of one occurrence . . . <u>insuring Lessee [Macy's] and Lessor [Mall]</u> against any

ORDER * 2

>     liability that may accrue against them or either of them <u>on account of any occurrences in or about the premises</u> during the term or in consequence of Lessee's [Macy's] occupancy of the premises and resulting in personal injury or death, said insurance to protect and indemnify Lessee [Macy's] and Lessor [Mall] not only against any and all such liability, but also against all loss, expense and damage of any and every sort and kind, including costs of investigation and attorney's fees and other costs of defense . . . .
>
>     32.2 <u>Lessor [Mall] shall</u> at its sole expense at all times during the term of this lease <u>maintain</u> or cause to be maintained, in full force and effect with a financially responsible insurance company or companies, <u>comprehensive public liability insurance covering the Common Areas naming Lessee [Macy's] as an additional insured, including coverage for any accident</u> resulting in personal injury to or death or any person, with limits of not less than Five Hundred Thousand Dollars ($500,000) per person and One Million Dollars ($1,000,000) per occurrence . . . . All such policies required of Lessor [Mall] hereunder shall name Lessee [Macy's] as an additional insured thereunder . . . .

(Underlining added.)

This Lease language is now in dispute because of the unfortunate fall, and death, of eighty-five-year-old Maureen Schmahl. On July 12, 2007, Ms. Schmahl fell after tripping over an electrical cord that ran from one of Macy's displays located in the Mall's common area. Ms. Schmahl died two weeks later. Ms. Schmahl's estate filed this wrongful death action against Macy's. (Ct. Rec. 1.) Macy's in turn filed a third-party complaint against the Mall, alleging that the Mall breached 1) Lease paragraph 32.2 by failing to name Macy's as an additional insured[1] and 2) Lease paragraph 31.2 by failing to accept tender of the wrongful

---

[1] It is undisputed that at the time of Ms. Schmahl's accident that Macy's was not named as an additional insured on the Mall's liability policy. One month after Ms. Schmahl's fall, Macy's was added to the Mall's commercial general liability policy as an additional insured.

ORDER ~ 3

death action. (Ct. Rec. 19.) In response, the Mall counterclaimed that Macy's breached the Lease by 1) failing to name the Mall as a named insured on Macy's general liability policy and 2) failing to hold the Mall harmless from the wrongful death claims.

## II. Macy's Motion to Strike

Macy's moves to strike paragraph 5, 6, 8, and 9, as well as exhibits 1 and 2, to Kim Impecoven's declaration. The Court rules as follows:

- Paragraph 5 contains a conclusory legal statement without facts proving personal knowledge. Therefore, paragraph 5 is stricken.
- Paragraph 8 is not stricken because Mr. Impecoven, as the Mall's insurance agent, is in the best position to know what insurance he would have procured upon the Mall's request.
- Paragraphs 6 and 9 and exhibits 1 and 2 are not stricken because they discuss what insurance coverages were available pre- and post-accident, thereby, allowing the Court to fully consider the Mall's arguments.

Accordingly, Macy's motion is granted and denied in part.

## IV. Summary Judgment Motion[2]

The Mall seeks summary judgment in favor on Macy's breach of contract claims and its own contract counterclaims. As explained below,

---

[2] The Court considered the facts and all reasonable inferences therefrom as contained in the submissions and the parties' Joint Statement of Uncontroverted Facts (Ct. Rec. 48), in the light most favorable to Macy's, the party opposing the motion. *See United States v. Diebold, Inc.*, 369 U.S. 654, 655 (1972) (per curiam).

ORDER ~ 4

the Court grants the Mall summary judgment as to Macy's claim that the Mall breached indemnity provision paragraph 31.2, but denies the Mall summary judgment on Macy's breach of insurance provision paragraph 32.2 claim and on the Mall's counterclaims.

**A.    Summary Judgment Standard**

Summary judgment is appropriate if the "pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c). Once a party has moved for summary judgment, the opposing party must point to specific facts establishing that there is a genuine issue for trial. *Celotex Corp. v. Catrett,* 477 U.S. 317, 324 (1986). If the nonmoving party fails to make such a showing for any of the elements essential to its case for which it bears the burden of proof, the trial court should grant the summary judgment motion. *Id.* at 322. "When the moving party has carried its burden of [showing that it is entitled to judgment as a matter of law], its opponent must do more than show that there is some metaphysical doubt as to material facts. In the language of [Rule 56], the nonmoving party must come forward with 'specific facts showing that there is a *genuine issue for trial.*'" *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.,* 475 U.S. 574, 586-87 (1986) (citations omitted) (emphasis in original opinion).

When considering a motion for summary judgment, a court should not weigh the evidence or assess credibility; instead, "the evidence of the non-movant is to be believed, and all justifiable inferences are to be drawn in his favor." *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 255

(1986). This does not mean that a court will accept as true assertions made by the non-moving party that are flatly contradicted by the record. *See Scott v. Harris,* 550 U.S. 372, 380 (2007) ("When opposing parties tell two different stories, one of which is blatantly contradicted by the record, so that no reasonable jury could believe it, a court should not adopt that version of the facts for purposes of ruling on a motion for summary judgment.")

**B.   Contract Interpretation Standard**[3]

"The interpretation of a contract begins with the language of the contract itself." *Independence Lead Mines Co. v. Hecla Mining Co.*, 143 Idaho 22, 26 (2006). And the interpretation of unambiguous contract terms is a question of law. *Harris v. State, ex. rel. Kempthorne*, 147 Idaho 401, 405 (2009); *Knipschield v. CJ - Recreation, Inc.*, 74 Wn. App. 212, 215 (1994). "The words used in a contract must be given their ordinary meaning unless context definition require otherwise." *Schauerman v. Hagg,* 68 Wn.2d 868, 873 (1966). Fundamental rules of contract interpretation apply to indemnity agreements which are to be construed so as to carry out the parties' intent. *Delson Lumber Co. v. Wash. Escrow*, 16 Wn. App. 546, 552 (1976).

**C.   Macy's Breach of Contract Claims**

The Mall requests summary judgment in its favor on Macy's claims that the Mall breached the Lease by failing to name Macy's as an

---

[3] The parties disagree as to which state law, Idaho or Washington, governs the *contract*. Yet, both parties agree that this issue need not be resolved now because there are no significant differences between the states' contract interpretation laws.

ORDER * 6

additional insured and by failing to accept tender of the wrongful death action because 1) the Mall had no duty to indemnify Macy's for Macy's own negligence and 2), even if Macy's had been an additional insured on the Mall's insurance policy, the policy would not cover Macy's in the wrongful death suit.  As explained below, the Court grants (indemnity - paragraph 31.2) and denies (insurance - paragraph 32.2) in part the Mall's request.

1. <u>Interpreting the Indemnity and Insurance Provisions</u>[4]

Initially, the Mall asks the Court to construe the insurance and indemnity provisions together so that the indemnity provisions' phrase, "not due to the negligence of [the other party]," applies to the insurance provisions, thereby having the effect of making each party responsible only for its own negligence.  For the following four reasons, this requested interpretation is not reasonable.

First, the Lease provisions are organized by subject, not by each party's liability obligations. For instance, paragraph 31.1 identifies when Macy's must indemnify the Mall.  Paragraph 31.1 is followed by paragraph 31.2, which sets forth the *Mall's* indemnity obligations, not

---

[4] The Mall's argument is based on the notion that Macy's is attempting to force the Mall to indemnify Macy's. However, Macy's is asking the Mall to step into the shoes of the insurance carrier that the Mall was obligated to procure on Macy's behalf, which is not an act of indemnification. The Court addresses the Mall's interpretation arguments in the light of the insurance obligations since this is not an indemnity issue.

ORDER ~ 7

by paragraph 32.1, which sets forth the Macy's insurance obligations. While paragraph 51.1 states that "headings of sections are for convenience of reference only and shall not be used to define, limit or construe any provision of this lease," it remains significant that the provisions in dispute are organized by subject, not by a party's liability obligations. The lack of immediate proximity between paragraph 31.2 (Macy's duty to indemnify) and paragraph 32.1 (Macy's duty to insure) casts doubt on the Mall's assertion that the indemnity and insurance provisions are to be construed together.

Second, neither the insurance provisions nor the indemnity provisions reference each other.

Third, the terminology differences in the two insurance provisions demand a finding that they are not to be limited by the indemnity provision. For instance, paragraph 32.1 states that Macy's has the duty to obtain insurance for the purpose of "protect[ing] and indemnify[ing] [Macy's] and [the Mall] . . . ." In comparison, this language is absent from paragraph 32.2. Unlike the two insurance provisions, the language of the two indemnity provisions is largely identical. The parties' clearly intended the insurance provisions and the indemnity provisions to serve different purposes and did not intend for the insurance provisions to be construed in light of the indemnity provisions.

Lastly, the Mall impliedly admitted that its interpretation was not reasonable. In its Memorandum of Authorities, the Mall states:

> Macy's contractual obligation here is to provide to the Mall the exact same coverage as Macy's itself has. Merely naming the Mall as an additional insured on the Macy's liability policy does not satisfy that contractual mandate, because, as discussed herein, as an additional insured the Mall would be

ORDER * 8

        insured only for claims against it arising out of someone's
        negligence other than its own.

(Ct. Rec. 31 at 14.) The Mall implicitly states that Macy's was required to provide insurance for the Mall in cases where the Mall may be negligent. This argument is irreconcilable with the Mall's proposed interpretation that the indemnity and insurance provisions be read together, which would result in a finding that the parties are solely responsible for their own negligence.

For these reasons, the Court does not adopt the Mall's suggestion that the insurance and indemnity obligations are to be interpreted together, thereby limiting each party's liability to its own negligence. Rather, the indemnity provisions (paragraphs 31.1 and 31.2) and the insurance provisions (paragraphs 32.1 and 32.2) do not limit the reach of one another. The Mall's motion is denied in part.

2.   <u>Macy's Indemnity Claim</u>

The Mall seeks summary judgment on Macy's claim that the Mall's failure to accept Macy's tender of the wrongful death action was a breach of Lease paragraph 31.2 (indemnity). The Mall argues that under paragraph 31.2 it had no duty to indemnify Macy's for Macy's own negligence. The Court agrees.

The indemnity provision states that the Mall must indemnify Macy's for claims arising out of the common areas, "not due to the negligence of [Macy's]." The wrongful death suit is solely against Macy's and the statute of limitations has expired; therefore, no other party may be joined to the wrongful death action. Thus, Macy's is the only party that can potentially be held liable. Under these circumstances, the Mall has no obligation under Lease paragraph 31.2 to indemnify Macy's.

ORDER * 9

Accordingly, summary judgment is entered in the Mall's favor relating to Macy's failure to indemnify claim; the Mall's motion is granted in part.

### 3.  Macy's Additional Insured Claim

The Mall also seeks summary judgment in its favor on Macy's claim that the Mall breached Lease paragraph 32.2 by not adding Macy's as an additional insured to the Mall's insurance policy on the grounds that Macy's suffered no resulting harm.  It is undisputed that the Mall failed to add Macy's as an additional insured, but the Mall argues that, even if it had added Macy's as an additional insured, the provided insurance would not have provided coverage for the wrongful death purportedly caused by Macy's negligence.

In support for its position, the Mall provides copies of the insurance it procured after the alleged wrongful death in which it names Macy's as an additional insured. That policy indicates that the additional insured is covered only for "liability . . . caused, in whole or in part, by [the Mall's] acts or omissions . . . ."  Thus, this policy, even if it has been in effect on the date of Ms. Schmahl's fall, would not provide coverage for the wrongful death damages if Macy's is found to be negligent.

Nonetheless, the Court finds that this post-incident insurance does not control.  The focus rather is on what additional insured coverage was required by Lease paragraph 32.2.  Paragraph 32.2 states, that the Mall was required to maintain "comprehensive public liability insurance covering the Common Areas naming [Macy's] as an additional insured . . . ."  Paragraph 32.2 did not place a limitation on this coverage in the event that Macy's was the negligent party.  Therefore, the Court finds

ORDER * 10

it was the parties' intent to have the Mall provide coverage for the Common Areas to itself and Macy's, regardless of fault. The alleged wrongful death occurred in the Mall's Common Area. Accordingly, the Court denies the Mall's request to enter summary judgment in its favor as to Macy's claim that the Mall breached paragraph 32.2.

### 3. Indemnification

The Mall also asserts that Macy's cannot recover from the Mall because Macy's indemnity obligation under Lease paragraph 31.1 prohibits involving the Mall in an action where only Macy's can be held liable. The Mall's argument fails.

Macy's claim that the Mall breached Lease paragraph 32.2 is based on the Mall's failure to name Macy's as an additional insured for the Common Areas. Macy's is not attempting to make the Mall liable in the wrongful death action, but rather is seeking recovery for the damages, including potential liability in the wrongful death action and attorney's fees and costs incurred to defend the wrongful death action, resulting from the Mall's failure to add Macy's as an additional insured as required by paragraph 32.2. The Mall cannot rely on the indemnification provision to excuse its breach of contract. *See Taylor v. Browning*, 129 Idaho 483, 493-94 (1996) ("A party may not breach a contract and then rely on an indemnity provision to hold itself harmless.").

### 4. Summary

As stated above, the Mall's motion for summary judgment on Macy's claim that the Mall breached paragraph 31.2 (indemnity) is granted because the Mall did not have a duty to indemnify Macy's for its own negligence. However, the Mall's motion for summary judgment on Macy's claim that the Mall breached paragraph 32.2 (insurance) is denied.

ORDER * 11

**D.    The Mall's Breach of Contract Counterclaims**

The Mall seeks summary judgment on its counterclaims that Macy's breached the Lease by 1) failing to indemnify the Mall and 2) not insuring the Mall.

1.    Macy's Duty to Indemnify the Mall

As discussed above, Macy's has a duty under paragraph 31.1 to indemnify the Mall for claims not due to the Mall's negligence. This indemnification duty, however, does not extend to instances where Macy's seeks recovery for the Mall's own breach of the Lease. Macy's breach of paragraph 32.2 (insurance) claim is based on the Mall's failure to name Macy's as an additional insured; therefore, paragraph 31.1 (indemnification) does not apply to limit Macy's breach of paragraph 32.2 claim. Macy's may seek the damages resulting from the Mall's breach of paragraph 32.2. The Mall's motion is denied in part.

2.    Macy's Duty to Insure the Mall

The Mall argues that the insurance which Macy's has obtained for itself and the Mall is inadequate under the Lease terms. The Court need not decide whether the insurance provided by Macy's is sufficient because the Mall has not alleged facts establishing that it has been harmed by the alleged insufficient insurance.

3.    Summary

The Mall is denied summary judgment on its counterclaims.

**IV. Motion to Determine Applicable State Law**

Macy's asks the Court to determine the applicable state law for the underlying wrongful death action. As part of its request, Macy's submits that Idaho tort law should govern. Plaintiffs object, stating that Washington law should govern.

ORDER * 12

**A.   Choice of Law Standard**

To determine the substantive law to apply in a diversity case, a federal court applies the forum state's choice of law rules. *Brewer v. Dodson Aviation*, 447 F. Supp. 2d 1166, 1175 (2006). Washington requires a valid conflict of law issue to engage in a choice of law discussion. *Rice v. Dow Chem. Co.*, 124 Wn.2d 205, 210 (1994). If a valid conflict of law exists, Washington has determined that choice of law issues are settled following a two-step process. *Zenaida-Garcia v. Recovery Sys. Tech.*, 128 Wn. App. 256, 260 (2005). First, a court looks at the contacts the parties and underlying claim have to the states, including "[1)] the place where the injury occurred, [2)] the place where the conduct causing the injury occurred, [3)] the domicile, residence nationality, place of incorporation and place of business of the parties, and [4)] the place where the relationship, if any, between the parties is centered." *Id*. "If the contacts are evenly balanced, the second step of the analysis involves an evaluation of the interests and public policies of the concerned states to determine which state has the greater interest in determination of the particular issue." *Id*. at 260-61.

B.   <u>Conflict of Law</u>

Macy's points to four conflicting areas of law between Idaho and Washington. First, Idaho precludes a plaintiff's recovery if that plaintiff is more than 50 percent responsible for the injury. I.C. § 6-801. Washington law does not bar recovery if a plaintiff's attributable fault is more than 50 percent. RCW 4.22.005. Second, Washington and Idaho differ on the duty of care a landowner has to warn invitees. *Compare Brown v. Stevens Pass, Inc.*, 97 Wn. App. 519, 524 (1999) (recognizing no duty to warn invitees of open and obvious dangers), *and*

ORDER ~ 13

*Harrison v. Taylor*, 115 Idaho 588, 595 (1989) (retiring the "open and obvious danger doctrine" and adopting a duty of ordinary care to invitees). Third, collateral sources are treated differently in each state. *Compare Ciminski v. SCI Corp.*, 90 Wn.2d 802, 804 (1978) (stating that a plaintiff's award will not be reduced by collateral payments), *and* I.C. § 6-1603 (prohibiting double recoveries from collateral sources). Finally, Washington has no limit on noneconomic damages while Idaho has a limit of $250,000. I.C. § 6-1603.

Plaintiffs respond that these differences are not related to the underlying negligence giving rise to this action, but to an individual's ability to recover. The Court agrees that the states' conflicting legal concepts are related to an individual's ability to recover. However, Idaho's filing restriction on an individual who is more than 50 percent negligent is a significant restriction on not only the amount of recovery but *who* can recover. This is not a mere difference in damages. Therefore, there is at least one valid conflict of law issue. The Court moves on to Washington's two-pronged test to determine which state's law should apply.

C.   <u>Contacts</u>

In evaluating the contacts to the underlying claim, it is clear that Idaho law governs the tort action of the case. The alleged wrongful death occurred at the Palouse Mall, which is located in Idaho. The conduct causing the fall, or the alleged negligence on the part of Macy's, occurred in Idaho. Also, the place where the relationship between the parties is centered is the Palouse Mall in Idaho. Accordingly, all of the factors, except domicile of the parties (Macy's: Ohio; decedent: Washington), favor Idaho as the state whose laws should be applied to

ORDER ~ 14

this tort claim.  Because the contacts are not evenly balanced, there is no need to move on to step two of Washington's choice of law analysis. Idaho's tort laws govern the wrongful death claim.

### V. Conclusion

As stated above, **IT IS HEREBY ORDERED:**

1) The Mall's Motion for Summary Judgment (1) Dismissing Macy's Breach of Contract Claim; and (2) Entering Judgment on Palouse Mall's CounterClaim (**Ct. Rec. 30**) is **GRANTED** (Macy's claim that the Mall breached paragraph 31.2 (indemnity)) **and DENIED IN PART** (remainder).

2) Macy's Motion to Strike Paragraphs and Exhibits to Declaration of Kim Impecoven (**Ct. Rec. 38**) is **GRANTED and DENIED IN PART.**

3) Macy's Motion for Order Determining Applicable State Law **(Ct. Rec. 62**) is **GRANTED.** Idaho tort law governs the wrongful death claim.

**IT IS SO ORDERED.**  The District Court Executive is directed to enter this Order and forward copies to counsel.

**DATED** this  30th     day of July 2010.


                            s/Edward F. Shea
                          EDWARD F. SHEA
                     United States District Judge

Q:\Civil\2009\0068.msj.strike.conflict.wpd

ORDER * 15